**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,**<br><br>    Plaintiff,<br><br>    v.<br><br>**GOOGLE INC.,**<br><br>    Defendant. | Civil Action No. 6:15-cv-1039<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Eolas Technologies Incorporated ("Eolas") files this Complaint for Patent Infringement against Defendant Google Inc. ("Google" or "Defendant"), and alleges as follows:

**I.     PARTIES**

1.     In the early 1990s, the University of California, San Francisco ("the University") assembled a team of scientists and computer programmers to form the Center for Knowledge Management. The University was (and is) world renowned for biomedical research. The University selected Dr. Michael Doyle as Director of the Center for Knowledge Management due to his expertise in biomedical imaging, information security, and hypermedia design. The University also selected David Martin, an expert in computer system design and publishing on the Internet, and Cheong Ang, a world-class computer programmer with expertise in 3D visualization and remote computing, to join the team.

2.     As part of the Center for Knowledge Management's mission, the University tasked Dr. Doyle and his team with developing ways to make scientific research available to researchers and physicians around the world. Dr. Doyle had long been interested in the Carnegie Collection of Human Embryology, which includes a population of over 650 human embryos on

1136509

microscope slides collected from the late 1800s to the 1950s from miscarriages and autopsies, and preserved at the National Museum of Health and Medicine in Washington D.C. The Center for Knowledge Management recognized that the Carnegie Collection could be of vital importance in helping researchers and physicians understand early human development and detect and treat birth defects. However, the Carnegie Collection was unavailable to most researchers, because it was sitting in a museum.

3.      The Center for Knowledge Management created the "Visible Embryo Project"—in an effort to develop a way to make 3D images of the Carnegie Collection's embryos available to researchers and physicians all over the world using the then brand new World Wide Web. The University team wanted researchers and scientists to not only be able to view images of the embryos, but also to be able to interact with the images—to rotate them, view them from different angles in 3D, take measurements of the images, move them like they had the specimens in their labs, and, most importantly, use this information to make medical discoveries and help mothers deliver healthy babies.

4.      Working together on a white board, the University team came up with a novel idea: storing the Carnegie Collection's digital images on powerful server computers that researchers and physicians could control from their own computers located anywhere in the world. The University team created a system where the user's personal computer could tap into powerful remote computers, allowing researchers to access and interact with the massive Carnegie Collection of digital images without having to download the entire collection to their personal computers. Today, this powerful idea is widely used to deliver interactive content over the Internet.

5.      In the first few months after conceiving of their invention, the University team made about two dozen presentations regarding their breakthrough. They met with organizations such as the National Library of Medicine, the National Museum of Health and Medicine, and the High-Performance Computing Conference. Later, the Visible Embryo Project program led to several new research projects, including a contract from the National Institutes of Health funding development of new kinds of applications that would work with powerful computers over high-speed networks. As part of this project, the University team reconstructed over 30 embryos from the Carnegie Collection and made them available on computers at the San Diego Supercomputer Center at the University of California San Diego. As a result of having access to this data, Dr. Charles Paidas, at Johns Hopkins University, was able to compare the reconstructed Carnegie Collection data to 3D ultrasounds to detect birth defects and plan intrauterine surgeries to correct them.

6.      Dr. Doyle founded Eolas (which means "knowledge" in Gaelic) in 1994. Eolas conducts leading-edge research and development to create innovative technologies in the areas of interactive embedded and distributed applications, systems, data analysis, visualization, collaboration, and networking. Over the past two decades, Eolas' innovations have enabled corporations around the world to enhance their products and improve their customers' website experiences by enabling World Wide Web servers, in conjunction with users' browsers, to act as platforms for fully interactive embedded applications. This advanced technology provides rich interactive online experiences for Web users worldwide. The University team filed a patent application for their invention in October 1994, which issued as a patent in 1998, and has been cited by over 600 other patents.

7. Plaintiff Eolas is a corporation organized and existing under the laws of Texas, with its principal place of business at 313 East Charnwood Street, Tyler, Texas 75701.

8. Upon information and belief, Google is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC, 211 East 7th Street, Suite 620, Austin, Texas 78701.

## II.   JURISDICTION AND VENUE

9. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1-8 as though fully set forth in their entirety.

10. This action arises under the patent laws of the United States, Title 35, United States Code § 1, *et seq*. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

11. Personal jurisdiction exists generally over the Defendant because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas. Personal jurisdiction also exists specifically over the Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets products and services within the State of Texas, and more particularly, within the Eastern District of Texas, that infringe the patents-in-suit, as described more particularly below.

12. Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391(b)–(c) and 1400(b). Upon information and belief, Defendant has individually transacted business in this district and/or committed acts of patent infringement in this district.

### III. PATENT INFRINGEMENT

13. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1–12 as though fully set forth in their entirety.

14. United States Patent No. 9,195,507 ("the '507 Patent") entitled, "Distributed Hypermedia Method and System for Automatically Invoking External Application Providing Interaction and Display of Embedded Objects Within A Hypermedia Document," was duly and legally issued by the United States Patent and Trademark Office on November 24, 2015 after full and fair examination and is owned by transfer by Eolas. The named inventors of the '507 Patent are Michael Doyle, David Martin, and Cheong Ang.

15. On information and belief, Google directly infringes the '507 Patent in this District or otherwise within the United States by making, using, selling, offering to sell, and/or importing within or into the United States, without authority: (i) web pages and content to be interactively presented in browsers, including, without limitation, the web pages and content accessible via www.google.com and maintained on servers located in and/or accessible from the United States under the control of Google; (ii) software, including, without limitation, browser software and software that allows content to be interactively presented in and/or served to browsers; and/or (iii) computer equipment, including, without limitation, computer equipment that stores, serves, and/or runs any of the foregoing. As an example, Google disseminates interactive content, such as search suggestions and search result filtering, to Internet users via its websites, such as www.google.com, that infringes, for example, claims 1-9, 19-27, 32-40, 45, and 46 of the '507 Patent. On information and belief, Google's websites provide interactive search suggestions and search results via communications sent to and received from a Google server-side application located on two or more servers.

## IV.   PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.   A judgment that Defendant has directly infringed one or more claims of the '507 Patent;

B.   An award of all costs of this action, including attorneys' fees and interest; and

C.   Such other and further relief as the Court deems just and equitable.

## V.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands that all issues be determined by a jury.

Dated: November 24, 2015.                              **MCKOOL SMITH, P.C.**

/s/ Kevin L. Burgess
Kevin L. Burgess
Lead Attorney
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
John B. Campbell
Texas State Bar No. 24036314
jcampbell@mckoolsmith.com
Mario Apreotesi
Texas State Bar No. 24080772
mapreotesi@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Mike McKool
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF
EOLAS TECHNOLOGIES
INCORPORATED**